IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLAY CALDWELL, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Civil Action No. 07-726 |
| ) | Judge Terrence F. McVerry/ |
| JEFFREY BEARD, Ph.D., et al., ) | Magistrate Judge Amy Reynolds Hay |
| ) | |
| Defendants ) | |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is recommended that the all but one of the claims contained in the Amended Complaint [10] be dismissed before service for failure to state a claim upon which relief can be granted pursuant to the screening provisions of the Prison Litigation Reform Act.

REPORT

Clay Caldwell ("Plaintiff"), currently incarcerated at SCI-Greene and serving a life sentence for murder, has filed a civil action against many Department of Corrections employees and the Governor of Pennsylvania. The actions allegedly taken by the Defendants between December 1, 2006 and December 3, 2006, are as follows.

Plaintiff claims that Officer Harkelroad prevented Plaintiff from going to the law library on December 1, 2006, to prepare a response to a time-sensitive court order. Dkt. [10] at 3. Further, he claims that Defendant Gagnon prevented Plaintiff from mailing out legal papers he prepared after being permitted in the law library on December 3, 2006. Id. at 4. He also complains that the DOC has a policy of not delivering mail on Saturdays. Id. In a related vein,

he complains that Defendant Jeffrey Beard instituted the policy of not delivering mail on Saturdays.  Id. at 5.

Plaintiff also complains that Defendants Dan Davis, Louis Folino and Dean Geehring opened or permitted the opening of Plaintiff's incoming legal mail outside his presence.  Dkt. [10] at 4 - 6,  ¶¶ 3 -5.  Further, Plaintiff complains that Defendants Jeff Martin, William Stickman and Dennis Durant opened Plaintiff's outgoing mail to his family.  Dkt. [10] at 5, ¶ 9.  Plaintiff also alleges that Defendant Donald Williamson has placed Plaintiff in a prison other than the one ordered by the state sentencing judge.  Dkt. [10] at 5, ¶ 7.  Lastly Plaintiff complains that Defendant Governor Rendell "[s]hould have knowledge of what his employee's [sic] are doing in The Department of Corrections that Violates the Constitutional Rights of the wards of States Institutional System."  Dkt. [10] at 5, ¶ 8.  For the reasons set forth below, the only claim that should not be dismissed pursuant to the Prison Litigation Reform Act (PLRA) is the claim against Defendants Davis, Folino and Geehring that legal mail was opened outside Plaintiff's presence.

**Applicable Legal Principles**

In the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting civil rights actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody.  Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  Because Plaintiff is a "prisoner" who has filed a civil action against "officer[s] or employee[s] of a governmental entity" within the meaning of 28 U.S.C. § 1915A(a), the screening provision of Section 1915A(b) applies herein.  Similarly, because Plaintiff is a "prisoner" challenging "prison

conditions,"[1] the screening provision of 42 U.S.C. § 1997e(c)(1) applies.  Similarly, because Plaintiff is a "prisoner" who has been granted *in forma pauperis* status, the screening provision of 28 U.S.C. 1915(e) applies.   These screening provisions permit a court to dismiss complaints if they are frivolous, malicious, or if they fail to state a claim upon which relief may be granted.

In performing a court's mandated function of sua sponte reviewing a complaint under 28 U.S.C. §§ 1915A and 1915(e) and 42 U.S.C. § 1997e to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1977) ("Under  28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'.  This is the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)."), aff'd, 116 F.3d 473 (4th Cir. 1997) (Table).  As the Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 1974 (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  However, because Plaintiff is pro se, courts accord a more liberal reading of the complaint, employing less stringent standards when considering pro se pleadings than when judging the work product of an attorney.  Haines v. Kerner, 404 U.S. 519 (1972).

---

[1] Porter v. Nussle, 534 U.S. 516, 532 (2002)("the PLRA's exhaustion requirement [for 'prison conditions'] applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 206 F.3d 289, 295 (3d Cir. 2000), aff'd, 532 U.S. 731 (2001) (explaining the statutory phrase "prison conditions" to include claims concerning "actions . . . [that] make their [i.e. prisoners] lives worse.").

Nevertheless, the plausibility standard of Bell Atlantic applies even to pro se litigants. See Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007)(applying Bell Atlantic in pro se case).

Further, the court must read the complaint in the light most favorable to the Plaintiff and all well-pleaded, material allegations of fact in the complaint must be taken as true. See Estelle v. Gamble, 429 U.S. 97 (1976). However, the court need not accept as true any legal averments or legal conclusions contained in the complaint. Papasan v. Allain, 478 U.S. 265, 286 (1986)("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."); Labovitz v. Washington Times Corp., 172 F.3d 897, 898 (D.C. Cir. 1999)(the court "need not accept purely legal conclusions masquerading as factual allegations.")(some internal quotations omitted). Neither does the court have to accept as true anything in the complaint which contradicts facts of which the court may take judicial notice. See, e.g., Sprewell v. Golden State Warriors, 266 F.3d 979, 988(9th Cir. 2001)(In ruling on a motion to dismiss, "[t]he court need not, however, accept as true allegations that contradict matters properly subject to judicial notice. . . ."); Commonwealth Edison Co. v. United States, 46 Fed. Cl. 158, 160 n.3 (Fed. Cl. 2000)("Contrary to plaintiff's claim, it is well-established that a court need not accept as true allegations contained in a complaint that are contradicted by matters on which the court may take judicial notice. . . ."), aff'd, 271 F.3d 1327 (Fed.Cir. 2001).

In addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in disposing of a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994); Chester County Intermediate Unit v. Pennsylvania Blue Shield,

896 F.2d 808, 812 (3d Cir. 1990); see also Lloyd v. U.S., No. 99 C 3347, 1999 WL 759375, at *1 (N.D. Ill. Sept. 3, 1999) ("As the court may take judicial notice of public records without converting a motion to dismiss to a motion for summary judgment, Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994), the court will take judicial notice of court records in conducting its initial review under §1915A.").

**Discussion**

Plaintiff does not specifically mention in his complaint the Civil Rights Act, 42 U.S.C. § 1983. However, because he is seeking to vindicate his constitutional rights and he does not have a cause of action directly under the Constitution, a liberal reading of the complaint requires the court to construe his complaint as one invoking the court's jurisdiction pursuant to 42 U.S.C. § 1983. See, e.g., Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001)("a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983.").

The Court will first address Plaintiff's allegations that Defendants Dan Davis, Louis Folino and Dean Geehring opened or permitted to be opened outside Plaintiff's presence his legal mail. Dkt. [10] at 4- 6, ¶¶ 3-5. The Court finds that this is sufficient to state a claim. See, e.g., Bach v. Illinois, 504 F.2d 1100, 1102 (7th Cir. 1974)(Finding that a plaintiff is entitled to be present during the opening of legal mail addressed to him in prison).

The court will next address Plaintiff's denial of access to courts claim, which appears to be premised upon basically two events: the first one occurring on December 1, 2006, when he was not permitted to use the library by Defendant Harkelroad and the second, occurring on December 3, 2006, when Defendant Gagnon did not permit Plaintiff to go to mail a court

pleading. We find Plaintiff's claims here fail to state a claim as a matter of law because he has not identified any "actual injury." As the Supreme Court determined in Christopher v. Harbury, 536 U.S. 403 (2002), the "very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong . . . . the right [of access claim] is ancillary to the underlying claim, without which the plaintiff cannot have suffered injury by being shut out of court." Christopher, 536 U.S. at 414-15. Therefore, "[i]t follows that the underlying cause of action . . . is an element that must be described in the complaint, just as much as the allegations must describe the official acts frustrating the claim." Id. at 415. With this understanding the Court then went on to hold that

> Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant. Although we have no reason here to try to describe pleading standards for the entire spectrum of access claims, this is the place to address a particular risk inherent in backward-looking claims [i.e., claims, such as the one Plaintiff Caldwell brings herein, i.e., that past behavior of officials have caused him to lose access to courts in the past]. Characteristically, the action underlying this sort of access claim will not be tried independently, a fact that enhances the natural temptation on the part of plaintiffs to claim too much, by alleging more than might be shown in a full trial focused solely on the details of the predicate action.
>
> Hence the need for care in requiring that the predicate claim be described well enough to apply the "nonfrivolous" test and to show that the "arguable" nature of the underlying claim is more than hope. And because these backward-looking cases are brought to get relief unobtainable in other suits, the remedy sought must itself be identified to hedge against the risk that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a presently existing claim.

Id., at 416 (footnotes and citations omitted).

In the instant case, Plaintiff's complaint suffers at least two flaws under Christopher. First, Plaintiff has failed to sufficiently describe in the operative complaint what case he sought to bring that was interfered with, so that we may apply the nonfrivolous test.

Secondly, although Plaintiff asserted in his unamended complaint that his second PCRA petition, in Commonwealth v. Clay Caldwell, No. CP-9911-0786, was interfered with, see Dkt. [15] at 30, he cannot show that he lost a nonfrivolous suit as a result. According to the Memorandum Opinion filed in connection with Plaintiff's second PCRA petition, Plaintiff filed a second PCRA petition on May 4, 2006 and his appointed counsel filed a no-merit letter. Dkt. [15] at 34-35. That memorandum opinion also noted that the court had earlier issued an order dismissing the second PCRA petition. Dkt. [15] at 34-35. This Court takes judicial notice of the docket of the Court of Common Pleas of Philadelphia County and notes that Plaintiff's second PCRA petition, which was allegedly interfered with by the acts of the defendants in this suit, was dismissed as untimely on September 29, 2006.[2] The court takes further judicial notice that the PCRA court's determination of untimeliness was affirmed by the Superior Court.[3] Hence, even if the acts of the Defendants can be said to have caused Plaintiff's second PCRA petition to be interfered with, Plaintiff has not adequately alleged an injury under Christopher because an untimely second PCRA petition fails to qualify as a nonfrivolous suit. See, e.g., Banks v. Beard, No. 2:03CV659, 2006 WL 2192015, at *7 (W.D.Pa. Aug. 1, 2006) ("Plaintiff's access to courts

---

[2] The docket of Plaintiff's case may be found at:

http://ujsportal.pacourts.us/PublicReporting/PublicReporting.aspx?rt=1&&ct=4&dkt=103833706&arch=0&ST=9/7/2007%2011:38:32%20AM

[3] The opinion from the Superior Court is attached hereto as Appendix A.

claim based on this case fails because the Superior Court affirmed the trial court's finding that the PCRA petition was untimely. Consequently, Plaintiff fails to show that even if his right of access to the courts was violated in conjunction with this PCRA petition, he suffered an injury, i.e., that the PCRA petition was not frivolous."); Lee v. Jones, No. CIV. A. 00-0153-BH-C, 2001 WL 102364, at *3 (S.D.Ala. Jan. 18, 2001)(in rejecting a denial of access to courts claim, the Court ruled: "it appears that Plaintiff's Rule 32 petition [i.e., Alabama's post conviction relief procedure] is more than likely time-barred and is, therefore, a frivolous action. Accordingly, the undersigned finds that Plaintiff has failed to state a claim upon which relief may be granted due to his failure to establish that he suffered an actual injury in his collateral attack of his conviction and that the collateral attack was nonfrivolous."). Accordingly, the access to courts claim must be dismissed for failure to state a claim.

As to Plaintiff's complaint that the Defendants opened his outgoing mail to his family, we apply the test announced in Procunier v. Martinez, 416 U.S. 396 (1974), overruled in part on other grounds by, Thornburgh v. Abbott, 490 U.S. 401 (1989), and consider whether such action furthers an important or substantial government interest unrelated to the suppression of expression. We find that the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face"[4] with respect to the opening of his outgoing mail. See, e.g., Thomas v. Marshall, 44 Fed.Appx. 277 (9th Cir. 2002)(affirming the District Court's dismissal pursuant to 28 U.S.C. § 1915A of Plaintiff's claim that reading outgoing mail violated his constitutional rights); Altizer v. Deeds, 191 F.3d 540, 547-48 (4th Cir. 1999) ("Without question, the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological

---

[4] Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1974.

interests, and, therefore, constitutional"); Gassler v. Wood, 14 F.3d 406, 408, n.5 (8th Cir. 1994)("Several circuits, including ours, have held that prison officials do not commit constitutional violations by reading prisoners' outgoing nonprivileged mail."); United States v. Whalen, 940 F.2d 1027, 1035 (7th Cir.) (holding that "it is well established that prisons have sound reasons for reading the outgoing mail of their inmates"), cert. denied, 502 U.S. 951 (1991); Rosendahl v. Bontz, 14 Fed.Appx. 740, 741 (8th Cir. 2001); Rowe v. Shake, 196 F.3d 778, 782 (7th Cir.1999) (prison security is legitimate governmental interest justifying limitations on inmate's First Amendment rights); Gaines v. Lane, 790 F.2d 1299, 1304 (7th Cir. 1986) (upholding regulations authorizing prison officials to inspect incoming or outgoing non-legal mail for contraband against First Amendment challenges).  See also Procunier v. Martinez, 416 U.S. 396, 408 (1974)("[T]he legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restrictions on inmate correspondence."); Wolff v. McDonnell, 418 U.S. 539, 576 (1974) ("freedom from censorship is not equivalent to freedom from inspection or perusal").  Plaintiff alleges nothing in the operative complaint that would take his case outside of the general rule announced in these cases such that would render his claim plausible on its face.

As to Plaintiff's claims against the Defendants for failing to deliver mail on Saturdays, these claims fail to state a claim upon which relief can be granted as a matter of law.  See, e.g., Azania v. Bayh, 23 F.3d 410 (Table), 1994 WL 143005 at *1 (7th Cir. 1994)  ("We are unaware of any precedent establishing that inmates have a constitutional right to send mail on Saturdays."); Odom v. Tripp, 575 F.Supp. 1491 (E.D. Mo. 1983) (jail's policy of not delivering mail on Saturdays did not violate pretrial detainee's rights as the policy was reasonably related to

a nonpunitive government objective); Owen v. Shuler, 466 F.Supp. 5, 7 (N.D. Ind. 1977), aff'd, 594 F.2d 867 (7th Cir. 1979) (Table) (court dismissed complaint because prison's practice of not delivering mail received Friday afternoon until Monday was a de minimis delay which was not unreasonable); Green v. Ballou, 391 F.Supp. 806, 808 (W.D. Va. 1975), aff'd, 551 F.2d 306 (4th Cir. 1977)(Table)(court dismissed complaint because it was not empowered to inquire into the administrative detail of why jail did not deliver mail over the weekends).

As to Plaintiff's complaint that the Defendants placed him in a jail contrary to the state sentencing judge's order, Plaintiff fails to state a claim because the state court sentencing judge was without authority to order Plaintiff to serve his sentence in any particular DOC institution. Commonwealth v. Pulling, 470 A.2d 170, 174 (Pa.Super. 1983)("It is clearly established that the sentencing judge is without authority to direct that a term of imprisonment in excess of two years be served in a specific institution."). Even if it were otherwise and the courts of the Commonwealth could order a prisoner to be kept in a particular institution, Plaintiff's claim that the Defendants violated a state court order implicates merely a violation of state law, which is not cognizable under Section 1983. Gramenos v. Jewel Cos., 797 F.2d 432, 434 (7th Cir. 1986), cert. denied, 481 U.S. 1028 (1987)("In a suit under § 1983 the plaintiff must show a violation of the Constitution or laws of the United States, not just a violation of state law. The two are not the same.").

As to the allegation that Governor Rendell is liable because he "[s]hould have knowledge of what his employees are doing . . .",  the Court finds that the complaint merely attempts to allege liability against Governor Rendell upon a theory of *respondeat superior*, which is not a permissible basis for Section 1983 liability. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d

10

Cir.1988)("liability [in a civil rights action] cannot be predicated solely on the operation of respondeat superior."); McClelland v. Facteau, 610 F.2d 693, 695 (10th Cir. 1979) ("Respondeat superior is a doctrine of vicarious liability based upon public policy [and] the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way."). "A defendant in a [§ 1983] action must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d at 1207. Hence, the complaint must be dismissed against Governor Rendell because it seeks to hold him liable merely based upon *respondeat superior*.

  Alternatively, at most, Plaintiff's allegations against Governor Rendell are that he "should have knowledge" not that he does and this is merely an allegation that Governor Rendell has been negligent in supervising the DOC and DOC employees. Such allegations of negligence are insufficient. See e.g., Farmer v. Brennan, 511 U.S. 825, 860 (1994) (Thomas, J. concurring) ("Petitioner's suggested "should have known" standard is nothing but a negligence standard"); Kwasnik v. LeBlon, 228 Fed.Appx. 238, 244 (3d Cir. 2007) ("Liberally construing the Amended Complaint, as we must, we conclude that the allegations, and reasonable inferences drawn therefrom, at best, merely state a negligence claim. Negligence claims are not cognizable under § 1983.")(citing Daniels v. Williams, 474 U.S. 327 (1986)). The complaint simply fails to allege "enough facts to state a claim to relief that is plausible on its face" with respect to Governor Rendell.

  To summarize, the only claim that survives if the District Court adopts this report would be the claim against Defendants Dan Davis, Louis Folino and Dean Geehring for the opening of

Plaintiff's incoming legal mail outside of his presence.  All other claims should be dismissed for failure to state a claim upon which relief can be granted.

CONCLUSION

  In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

                Respectfully submitted,

                */s/  Amy Reynolds Hay*
                United States Magistrate Judge

Dated: 12 September, 2007

cc: Terence F. McVerry
   United States District Court Judge

   Clay Caldwell
   EM-2163
   S.C.I. at Greene
   175 Progress Drive
   Waynesburg, PA 15370